G-elmore, J.
The action in the court of common pleas was not brought upon any express or special contract, but to recover damages for a breach of an implied agreement to carry, and deliver at the place of consignment, a large lot of eggs, within a reasonable time, by a common carrier.
By failing to answer, the defendant (plaintiff in error) admitted the breach as alleged.
On an inquiry of damages, the court, against the objection of the defendant, permitted testimony to go to the jury tending to prove the market value of eggs at the place of consignment on the day they ought to have been delivered, and their value at that place on the day they were *20 actually delivered, and that their value was less on the latter than on the former day.
Counsel for plaintiff in error contends that the court erred in admitting this testimony to go to the jury, on the ground that the defendant “ is only bound to make good the loss which is the natural and legitimate result of his' failure to comply with his contract;” and that a loss arising from a depreciation in the market value of eggs at the place of delivery, in consequence of his breach of the contract, is not a natural or legitimate result of such breach.
In support of this proposition, counsel relies very much upon the leading English case of Hadley v. Baxendale, 9 Exch. 341.
The rule laid down in that case for the ascertainment of damages in cases of breach of contract is divided into two alternative heads.
Under the first of these, damages are to be allowed which would arise naturally, or according to the usual course of things from the breach of the contract; and, under the second, those which may fairly be supposed to have been contemplated by the parties as the probable result of such breach.
The case before that court fell under the first of these heads, as will appear from the following language, taken from the opinion : “Now, in the present case, if we are to apply the principles above laid down, we find that the only circumstances here communicated by the plaintiffs to the defendants, at the time the contract was made, were that the article to be carried was the brokeu shaft of a mill, and that the plaintiffs were the millers of that mill. Rut how do these circumstances show reasonably that the profits of the mill must be stopped by an unreasonable delay in the delivery of the broken shaft by the carrier to the third person ? ”
And the court was of the opinion that, under those circumstances, the profits of the mill, which were lost in consequence of the breach of the contract to deliver the broken-shaft, which was to be used as a pattern for a new one, *21 -within a reasonable time, did not constitute such damages .as would arise naturally, or according to the usual course ■of things, from the breach of. the contract.
But we do.not think that the facts and circumstances of the case before us bring it under the first; but, on the contrary, for reasons that will be stated below, we think it ■clearly falls under the second of the alternative heads in Hadley v. Baxendale, and that the plaintiffs were entitled to recover such damages as may reasonably be supposed to have heen in the contemplation of the parties at the time they made the contract, as the probable result of the breach of it.
The proposition, as thus stated, is fully sustained by an .abundance of authority. Ward v. New York Central R. R. Co., 47 N. Y. 29; Scott v. Boston and New Orleans Steamship Co. 106 Mass. 468 ; Sedgwick on the Measure of Damages (6 ed.), 79 ; Ib., note, 81; Field on Damages, sec. 375 ; Griffin v. Colvin, 16 N. Y. 489; Cutting v. Grand Trunk R. W. Co., 13 Allen, 381.
In view of the doctrine as settled by these authorities,it may be safely said that if a common carrier is chargeable with knowledge that the article carried is intended for the market, and unreasonably delays its delivery, and there is a depreciation in the market value of the article at the place of consignment, between the time it ought to have been delivered and the time it was in fact delivered, such depreciation will, in the absence of any special contract, ■constitute the measure of damages.
Was the carrier chargeable with such notice in this case ? W e think he was.
The anxiety of the plaintiffs to obtain quick time on their shipments of eggs, which was communicated to the ■defendants’ agent, shows that, for some reason, they regarded “ time ” as an important element in the shipments. 'The agent, for some reason, appreciated the necessity for ■quick time in the contemplated shipments; .named a time within which he could carry the eggs over .his part of the ■route, and requested to be kept advised by telegraph, so *22 that he might give the eggs his special attention when they reached the point at which he was to receive them. Why this preconcerted arrangement ? With the knowledge of business, which their avocations must have put them in possession of, both parties knew that when large quantities of eggs were being shipped to a great city, they were-usually, if not always, intended for the market at such city. And the reason why both parties recognized the necessity of quick time in the transportation of the article, ■ was that they undoubtedly knew that in this country the market value of eggs was liable to decline at the season of the year in which the shipment was made in this case, and the damages consequent upon such a decline must have been in the contemplation of both parties at the time the-contract was made.

Motion overruled.