WILLIAM HARVEY *vs.* CONNECTICUT AND PASSUMPSIC RIVERS RAILROAD COMPANY.

Suffolk.   March 19, 1877. — May 25, 1878.   LORD & SOULE, JJ., absent.

An agreement in writing by a carrier to transport, from one place to another, merchandise for A., at a certain rate of freight, for a specified time, is a continuing offer, and is binding on the carrier whenever, during the time specified, A. tenders the merchandise; and the failure to transport the merchandise so tendered is a breach of the contract, for which an action can be maintained.

In an action against a carrier for breach of an executory contract to carry goods, the measure of damages is the market value of the goods at the place to which they should have been carried, less their value at the place where the carrier agreed to receive them, and less freight; and the facts that the owner of the goods informed the carrier, at the time of making the contract, that he did so because he wished to make contracts with third persons for the sale of goods to them, and that he did make such contracts afterwards, do not entitle him to recover of the carrier the profits which he would have made, but for the breach of the contract of carriage.

CONTRACT on the following agreement : " The Connecticut & Passumpsic Rivers Railroad Company agrees to transport for Wm. Harvey & Co., lumber, such as railroad ties, shingles, hewn and sawed timber of all kinds, clapboards, shingle and

stave-bolts, from Warwick and Askerbaska stations, on the Grand Trunk Railway, in Canada, to Boston, at sixty-seven dollars eighty cents per car of ten gross tons, for twelve months from this date, in United States currency; also from Dusett's Landing, in Canada, for seventy-six $\frac{40}{100}$ dollars per car of same weight. Boston, August 31, 1871.

" Emmons Raymond, Prest."

At the trial in this court, before *Colt*, J., the jury returned a verdict for the plaintiff; and the judge reported the case for the consideration of the full court. The facts appear in the opinion.

*C. T. Russell & C. T. Russell, Jr.*, for the defendant.

*R. D. Smith*, for the plaintiff.

ENDICOTT, J. The defendant agreed in writing with the plaintiff to transport lumber from certain stations on the Grand Trunk Railway, in Canada, to Boston, at a certain rate of freight, for a period of twelve months from August 31, 1871. This agreement constituted a continuing offer, on the part of the defendant, to transport such lumber as the plaintiff should furnish at the specified points during the period named, and was binding on the defendant whenever, during that time, the plaintiff tendered lumber for transportation according to its terms; and failure to transport the lumber afterwards offered by the plaintiff was a breach of the contract. *Bornstein* v. *Lans*, 104 Mass. 214.

It also appeared that the plaintiff informed the company, at the time, that he desired to make this contract, because he wished to make contracts with other persons to sell and deliver railroad ties in Boston. He afterwards made contracts with two railroads for the delivery of ties in Boston. He notified the defendant for the first time in May or June, 1872, that he had made such contracts, and demanded transportation for a portion of these ties to Boston. under his contract. This the defendant failed to do.

As the plaintiff had made no contracts for the delivery of ties in Boston at the time when the defendant entered into the agreement to transport, and no notice was or could then have been given of the character and terms of those contracts, we are of opinion that the defendant cannot be held liable in damages for the profits which would have accrued to the plaintiff under such

subsequent contracts.   Such damages could not have been in the contemplation of the parties when they made their contract, as a probable result of a breach of it.

When a carrier receives goods for transportation, and fails to deliver them, the owner is entitled to recover the market value of the goods at the time and place at which they should have been delivered.  *Spring* v. *Haskell*, 4 Allen, 112.  And where the carrier negligently delays the delivery of goods, he is liable for loss in their market value during the delay.  *Cutting* v. *Grand Trunk Railway*, 13 Allen, 381.  It is said in that case that this "is the most simple and just rule, as well as the easiest to be applied; for it depends on the general market value of the goods, and involves no question of contingent or speculative profits, and no consideration of any other contracts made or omitted to be made by the plaintiff in view of his contract with the defendant. To refer to such other contracts, or the profits which might have resulted from them, not within the knowledge or contemplation of the defendant, would be to hold him liable for the consequences, or allow him the benefit, not of his own contract with the plaintiff, but of dealings between the latter and third persons, with which the defendant had nothing to do."

If, therefore, the defendant had received the ties for transportation according to its contract, and failed to deliver them at all, it would have been liable for their market value in Boston at the time when they should have been delivered; or if it had negligently delayed the delivery, it would have been liable for the diminution in their market value during the delay.  It would not, in either event, have been liable in damages for loss of profits sustained by the plaintiff under his subsequent contracts with other parties; unless it can be said that, by reason of the plaintiff's announcement that he intended to make such contracts, it was necessarily within the contemplation of the parties when they made the contract of transportation, and as the probable consequence of its breach, that the defendant might be liable for damages resulting to the plaintiff from his inability to fulfil such contracts, the terms of which were not and could not then be disclosed.

The damages, for which a carrier is liable upon failure to perform his contract, are those which result from the natural and

ordinary consequences contemplated at the time of making the contract of transportation; and a larger liability can be imposed upon him, only when it is in the contemplation of the parties that the carrier is to respond, in case of breach, for special and exceptional damages. In such a case, the extent and character of the obligation he assumes should be known to the carrier, which in this case was impossible, as the contracts were not then made. The mere knowledge on the part of the defendant, that the plaintiff intended to make contracts for the sale of the ties to be transported, cannot impose a liability upon the defendant for loss of profits on such contracts. Whether there would be a loss of profits, it was of course then impossible to determine, and probable profits would be incapable of estimation. If the defendant is liable in this case for such possible or probable profits, then every carrier who is informed, when he takes goods for transportation, that the shipper intends to sell them, is liable, upon failure to perform his contract, for loss to the shipper in his dealings with other parties, with which the carrier has nothing to do, and the result of which it is impossible for him to anticipate. *Scott* v. *Boston & New Orleans Steamship Co.* 106 Mass. 468. This would be to introduce a new and uncertain element of liability into the contract, and we are not aware of any authority which goes to that extent.

In *Hadley* v. *Baxendale*, 9 Exch. 341, the owners of a mill sent a broken shaft by a carrier, as a pattern to a manufacturer, to make a new shaft, and at the time informed the carrier that the mill was stopped, and the shaft must be delivered immediately. The carrier delayed its delivery for an unreasonable time, in consequence of which the owners did not receive the new shaft until some days after they should have received it, and were unable to work their mill for want of it, and thereby incurred a loss of profits. But it was held that such loss could not be recovered, on the ground that it could not reasonably be supposed to have been in the contemplation of the parties at the time they made the contract, as a probable result of a breach of it, that there would be necessarily a loss of profits.

In *Horne* v. *Midland Railway*, L. R. 7 C. P. 583, the plaintiffs were under a contract to supply a quantity of military shoes at a certain day, in London, at an unusually high price. They

were delivered to the defendant, with notice that the plaintiffs were under a contract to deliver the shoes on that day, and unless they were so delivered, they would be thrown upon their hands; but no notice was given of the terms of the contract. The defendant, a common carrier, failed to deliver them within the time. The plaintiff claimed as damages the difference between the price at which they had contracted to sell the shoes, and the price which they ultimately brought. But it was held that they were not entitled to recover that sum, the damage not being the natural consequence of the defendant's failure to perform its contract, and the defendant not having had notice that the sale was at an exceptional price.

This question has been considered in numerous cases, and it is sufficient to say that the principle upon which *Hadley* v. *Baxendale* was decided is now well established, though some of the *dicta* of Baron Alderson, in delivering the judgment, have been the subject of criticism. *Horne* v. *Midland Railway*, L. R. 8 C. P. 131, 133, 141. *Gee* v. *Lancashire & Yorkshire Railway*, 6 H. & N. 211. *Borries* v. *Hutchinson*, 18 C. B. (N. S.) 445. *Great Western Railway* v. *Redmayne*, L. R. 1 C. P. 329. *Wilson* v. *Newport Dock Co.* L. R. 1 Ex. 177, 184, 186. *Woodger* v. *Great Western Railway*, L. R. 2 C. P. 318. *British Columbia Saw-mill Co.* v. *Nettleship*, L. R. 3 C. P. 499. *Cory* v. *Thames Ironworks*, L. R. 3 Q. B. 181. See also *Waters* v. *Towers*, 8 Exch. 401, and Baron Parke's observation thereon in *Hadley* v. *Baxendale*, 9 Exch. 349.

We are therefore of opinion there was error in instructing the jury that the plaintiff could recover damages for loss of profits on his subsequent contracts. As the ties were not sent to Boston, the true measure of damages is the difference between the market price in Boston and the market price in Canada at the time when the defendant should have transported the ties according to its contract, deducting therefrom the price stipulated ..n the contract for transportation.    *Verdict set aside.*