## PIERCE F. LONERGAN *vs.* C. SIDNEY WALDO.

Suffolk.　November 14, 1900. — May 24, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

*Damages,* For Breach of Contract, Consequential contemplated by the parties.

If goods sold and paid for are not delivered, the measure of damages usually is their market value at the time and place at which they should have been delivered, but special circumstances may make the vendee's actual loss greater than the sum given by this common rule. When the special circumstances are known to both parties and each has contracted with reference to them, the party in fault justly may be held to make good to the other whatever damages he has sustained as the reasonable and natural consequences of a breach under the circumstances contemplated by the parties. *Semble,* that a vendor may always avoid such consequential liability by expressly declining to assume it, as in order to hold him his assent must be found from the facts. *Whether* one who like a common carrier is compelled to render the service for which he contracts would be held to the same liability from his undertaking to do the service with knowledge of the special circumstances and without a protest, *quære.*

One who agrees to deliver drain pipe to a contractor for use in a ditch already dug, and who is notified that delay in delivery will result in the washing in of the ditch in case of rain, may be found liable for the expense incurred by the contractor in re-digging the ditch, which by reason of delay caused by non-delivery of the pipe had been washed in by rain as anticipated.

CONTRACT by a contractor to lay drain pipe to recover $1,240, the expense of re-digging a ditch washed in by a rain storm by reason of the delay caused by the failure of the defendant to deliver one hundred and fifty feet of six inch drain pipe ordered of him and paid for by the plaintiff, the defendant having agreed to deliver the pipe after notice from the plaintiff that it was needed at once and that, if a rain storm occurred, the ditch would cave in.　Writ dated January 27, 1899.

At the trial in the Superior Court, before *Richardson,* J., the judge took the case from the jury and, in doing so, ruled as follows : " I do not think that the plaintiff can recover in this action, which is an action of contract, for the damage done to the trench or ditch by the rain storm, or for the expenses incurred in repairing that damage.　The plaintiff's counsel says that is the damage which he seeks to recover for, and the other damage will be so slight that he does not care to go to the jury

upon it. In view of this statement I will order a verdict for the defendant, and the plaintiff excepts."

The verdict was entered as directed ; and the plaintiff alleged exceptions. The evidence is fully described in the opinion of the court.

*A. S. Hayes*, for the plaintiff.

*G. A. O. Ernst*, for the defendant.

BARKER, J. The question whether the verdict was ordered rightly must be considered upon the state of facts most favorable to the plaintiff, which fairly could have been found if the case had been left to the jury.

He contended that he was entitled to large damages because of the caving in of a ditch resulting from the non-delivery of six inch drain pipe bought of the defendant on May 1, 1893, for the price of $13.50, then paid.

From his testimony it could be found that he first ordered the pipe on Thursday, April 28, by telephone, and that in giving the order he said that he was out of such pipe, and had his ditch all ready waiting for it, and a great deal of material on the bank, and that he could not leave it there very long; also that the answer to his order was that the pipe would be sent in the afternoon ; that the pipe did not come, and the plaintiff several times told the defendant's agent over the telephone that it was necessary that the pipe should come out ; that if a rain storm should come there was no possible chance of saving the ditch, as they were down twenty-four feet and there was a large amount of material on the banks.

The plaintiff further testified that on Monday, May 1, he was informed that the trouble was that he had reached the limit of his credit with the defendant; that he then went to the latter's office, was referred from one man to another and another, to the last of whom he told the dangerous condition he was in at the work and how much he was in need of the pipe; that he told them the condition of the ditch, that it was down twenty-four feet, and about nine or ten feet wide, and would certainly cave in if there should be a rain storm ; that they desired cash for any more goods, and thereupon he gave a check for the price of the pipe, and asked if they would attend to it right away ; that they said that they would, that the pipe would be out there

perhaps before he was, and thereupon he went back to the work; that at noon on Monday the pipe had not reached the work, and he then telephoned again and asked where the pipe was, and was answered that it would be out there in the afternoon sure; that he then waited until Tuesday morning, and then asked by telephone why the defendant would not send the pipe, saying that the defendant knew the plaintiff's condition at the work, and what the consequence would be, and was answered that the defendant would immediately attend to it; that no pipe came on that day, Tuesday, May 2, and none came on Wednesday, May 3, until after the plaintiff's men had gone home; and that the pipe which so came was not six inch pipe as ordered and purchased but eight inch pipe which he could not place in the ditch, and which he would not be allowed to use in it; also that a rain storm came on during Wednesday night, and on Thursday about noon the ditch was washed in, at a loss to him of about $1,240.

The plaintiff also testified that the ditch was sheathed with plank and was braced and that he had taken all the precautions to prevent its caving in which could be taken, and that the weather was threatening, and that he made no effort in any other direction to get the pipe. He also testified upon his cross-examination, as follows:

" *Q.* When they kept promising you and kept disappointing you, did you make any effort in any other direction to get that pipe? *A.* No.

" *Q.* Do you know that within an eighth of a mile from your place there was a store that had been established for thirty years which kept drain pipe, and which could have furnished you that pipe at practically a moment's notice? *A.* I think I had gone to them, as you have refreshed my memory, and I think I have got 6-inch pipe, all they had there, I think, I have bought —

" *Q.* You did buy some 6-inch pipe from Balkam, did you? *A.* I can't swear to it, but I am very sure I went down there for 6-inch pipe. I didn't buy any prior to this time.

" *Q.* You knew where the store was? *A.* I didn't know that they had 6-inch pipe.

" *Q.* You didn't inquire? *A.* I must have inquired if I found out that he had it. I think I was down to him to buy some nails — some things like that, little incidentals that we would want."

The defendant offered evidence tending to show that no conversations occurred over the telephone or at his store such as the plaintiff testified to; that nothing was said about the danger to the ditch; that no suggestion was made as to any special haste; that the pipe was sold to be, and was, delivered in the usual course of business the next day, May 2.

Experts called by the defendant testified that there was a perfectly practical way of protecting the ditch in question against caving in, and that if the plaintiff had used it the ditch would not have caved in.

Sewall D. Balkam, called by the defendant, testified that his place of business was, and had been since 1872, on Centre Street, Jamaica Plain, about five or six minutes' walk from where the plaintiff was at work on the corner of Weld Park and the same street, Centre Street; that at the time in question he dealt in six inch pipe, and had it in stock for sale, and that its then fair market value in Jamaica Plain, delivered at Weld Park, was ten to twelve cents a foot, or from $15 to $18 for one hundred and fifty feet.

In reply to a question from the court the plaintiff's counsel said that he did not claim to recover for any delay in delivery prior to May 1 when the pipe was paid for. In reply to another question from the court he said that he did not want to go to the jury on any question of damage other than the damage done by the washing in of the ditch, and the expense entailed in rebuilding the ditch.

The court ruled, on taking the case from the jury, "I do not think that the plaintiff can recover in this action, which is an action of contract, for the damage done to the trench or ditch by the rainstorm, or for the expenses incurred in repairing that damage. The plaintiff's counsel says that is the damage which he seeks to recover for, and the other damage will be so slight that he does not care to go to the jury upon it. In view of this statement I will order a verdict for the defendant, and the plaintiff excepts."

Upon this state of the evidence it could not be ruled as a matter of law that the plaintiff was negligent in relying wholly upon the expected delivery, and in making no effort to get pipe elsewhere; nor in the means which he used to protect the ditch

from caving in. It could be found from the evidence that the purchase and sale were made upon a full disclosure of the special circumstances to which the plaintiff testified, and that both parties acted upon full knowledge that the pipe sold was bought by the plaintiff to be used in a ditch such as was described in his testimony; and that at the time of the sale, the caving in of the ditch was to be apprehended reasonably as a consequence of delay, and if the delay should be caused by failure to deliver the pipe the caving in might be found to be a damage which ordinarily would follow the breach.

If goods sold and paid for are not delivered the measure of damages usually is their market value at the time and place at which they should have been delivered, with interest thereon. *Cutting* v. *Grand Trunk Railway,* 13 Allen, 381, 385. But special circumstances may make the vendee's actual loss greater than the sum given by this common rule. When owing to special circumstances such greater damages are in fact sustained it is clear that they cannot be recovered of the party in fault, unless the special circumstances which made it reasonable to expect that the greater damages would naturally ensue were, at the time when the contract was made, within the knowledge of both parties. *Batchelder* v. *Sturgis,* 3 Cush. 201, 204. *Cutting* v. *Grand Trunk Railway, ubi supra.* *Scott* v. *Boston & New Orleans Steamship Co.* 106 Mass. 468, 471. *Harvey* v. *Connecticut & Passumpsic Rivers Railroad,* 124 Mass. 421. *Swift River Co.* v. *Fitchburg Railroad,* 169 Mass. 326.

When the special circumstances are known to both parties, it is obvious that each may have contracted with reference to them; and that, if such was in fact the case, the party in fault may be held justly to make good to the other whatever damages he has sustained which were the reasonable and natural consequences of a breach under the circumstances so known and with reference to which the parties acted. In such cases the larger damages may be recovered, as having been in the contemplation of both parties, and as naturally resulting, under the special circumstances from the breach itself. *Cutting* v. *Grand Trunk Railway, ubi supra.* *Townsend* v. *Nickerson Wharf Co.* 117 Mass. 501, 503. *Manning* v. *Fitch,* 138 Mass. 273, 276.

But it is equally obvious that when special circumstances exist

and are known to both parties a vendor may decline to assume any larger responsibility for a breach of his engagement than that to which he would be subjected by the common rule of damages. If, in the present instance, the defendant upon being told of the condition of the ditch had notified the plaintiff that if the pipe should not be delivered seasonably the defendant would not be answerable for the loss if the ditch should cave, it would be unjust to hold the defendant for the loss. The defendant cannot be so held, justly, unless at the time of the sale he in substance assented that he would be so held.

It is not contended that there was an express assent. Therefore the vital question is whether such assent could have been found from the evidence. When one of two contracting parties stands in such a relation as compels him to render the service for which he contracts, as for instance in that of a common carrier, it might be unfair to infer, from his undertaking to do the service with knowledge of the special circumstances and without a protest that he assented to any unusual obligation. Upon this question we express no opinion. But in the present case the defendant was under no obligation to sell the pipe. He could contract or not as he chose. If, knowing all the circumstances, the defendant sold the pipe without any protest or statement that he would in no event be liable for a caving of the ditch, he might be found by the jury to have assented to be bound to pay damage for its caving if that should be caused by breach of his contract to deliver the pipe. See *Grébert Borgnis* v. *Nugent*, 15 Q. B. D. 85, 89; Mayne, Damages, (5th ed.) 41; *Horne* v. *Midland Railway*, L. R. 8 C. P. 131, 141; Benjamin, Sales, (6th Am. ed.) §§ 872, 874.

Therefore, upon the evidence, it was wrong to direct a verdict for the defendant.

*Exceptions sustained.*