## CHARLES E. WESTON *vs.* BOSTON AND MAINE RAILROAD.

Essex.     November 9, 1905. — February 26, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Carrier. Damages. Railroad.*

In an action against a railroad company for failure to deliver scenery and other theatrical property received from the plaintiff for transportation with full knowledge that they were to be used in exhibitions previously widely advertised at the place of destination and that the expenses of the owner in connection with the exhibitions were to be large, the plaintiff, on proof of negligent delay in delivery, can recover the amount of the ordinary gross earnings from the exhibitions which he was prevented from giving less the amount of the expenses from which his inability to use the property saved him.

TORT by the owner of a public amusement enterprise, called the Galatea Exhibit, for alleged negligent delay in forwarding from Winchendon to Milford scenery and other theatrical property used by the plaintiff in his show business. Writ dated August 16, 1902.

In the Superior Court the case was tried before *De Courcy*, J. The character of the evidence as to notice to the defendant of the purpose for which the property was to be used is described in the opinion. It was agreed by the parties that the money expended by the plaintiff in looking up his property amounted to $4, and the judge ordered the jury to return a verdict for the plaintiff in that sum. He ruled that the plaintiff could recover no more ; and the plaintiff alleged exceptions.

*J. C. Sanborn*, for the plaintiff.

*H. F. Hurlburt*, for the defendant, submitted a brief.

LORING, J. This case presents in different forms but one question, namely : To what damages is the owner of a theatrical exhibit entitled in case of a negligent delay in the transportation of his scenery and other theatrical properties by a carrier who had full knowledge that they were to be used in an exhibition previously widely advertised at the place of destination, and that the owner was under an expense of $300 or $400 a week in that connection.

The judge ruled that the plaintiff was limited to $4, "the actual money lost or expended in looking up his goods."

The first ground on which the defendant has undertaken to support this ruling is that the shipping receipt or the shipping receipt and the shipping order constitute a written contract between the parties by which and by which alone their rights are to be determined.

. No authorities have been cited for this contention, and we conceive that none can be found to support it. We assume for the purposes of this decision that this shipping receipt, or at any rate the shipping order and this receipt taken together, constitute a written contract. But it is always competent to show knowledge by the contracting parties to a written contract of the circumstances on the basis of which it is made, for the purpose of showing what was within the contemplation of the parties in making it. Knowledge of the circumstances which form the basis on which the contract is made is competent on the question of what damages were in the contemplation of the parties to it, whether a party seeks to recover ordinary or special damages. That has been laid down in all the cases on the subject. See for example *Scott* v. *Boston & New Orleans Steamship Co.* 106 Mass. 468; *Harvey* v. *Connecticut & Passumpsic Rivers Railroad*, 124 Mass. 421; *Mather* v. *American Express Co.* 138 Mass. 55; *Lonergan* v. *Waldo*, 179 Mass. 135; *Hadley* v. *Baxendale*, 9 Exch. 341; *Horne* v. *Midland Railway*, L. R. 7 C. P. 583; *S. C.* L. R. 8 C. P. 131; *Simpson* v. *London & Northwestern Railway*, 1 Q. B. D. 274; *Grébert Borgnis* v. *Nugent*, 15 Q. B. D. 85.

The next ground on which the defendant has sought to support the ruling is on the authority of *Waite* v. *Gilbert*, 10 Cush. 177; *Harvey* v. *Connecticut & Passumpsic Rivers Railroad*, 124 Mass. 421; and *Swift River Co.* v. *Fitchburg Railroad*, 169 Mass. 326.

But the plaintiffs in those cases were confined to the damages to which the plaintiff was confined in the case at bar, for want of proof of the necessary notice, while in the case at bar proof of the necessary notice was plenary.

Where a plaintiff is deprived of the use of property valuable for use and the property is something that can be replaced, his

damages are the expenses of hiring the property which he is forced to substitute for it.

But if the property is such that it cannot be replaced, the measure of damages is what such property is ordinarily worth for use. See *Fletcher* v. *Tayleur*, 17 C. B. 21, 28 ; *Cory* v. *Thames Ironworks & Shipbuilding Co.* L. R. 3 Q. B. 181; *Ex parte Cambrian Steam Packet Co.* L. R. 6 Eq. 396, 408 ; *S. C.* L. R. 4 Ch. 112, 117.

There are no cases in this Commonwealth very near to the one under discussion. Perhaps the nearest are the cases in which it is held in an action of trover that where the property converted has no market value but has a special value to the plaintiff, he can recover that value. *Stickney* v. *Allen*, 10 Gray, 352. *Green* v. *Boston & Lowell Railroad*, 128 Mass. 221. *Mather* v. *American Express Co.* 138 Mass. 55. See also in this connection *Wall* v. *Platt*, 169 Mass. 398, 406.

Where the article of the use of which the plaintiff has been wrongfully deprived cannot be replaced and the plaintiff recovers for being deprived of the use of what such property ordinarily earns, he recovers profits in one sense of the word but not in that sense of the word in which it is used when it is said that profits cannot be recovered because too remote. What is meant by that is that the plaintiff cannot recover for the loss of special profits, such as a particular bargain which he has lost. For a good statement of the distinction see *Masterton* v. *Mayor of Brooklyn*, 7 Hill, 61.

There are cases where contracts are made with reference to such special profits, and where such special profits can be recovered. Such profits were recovered in *Grébert Borgnis* v. *Nugent*, 15 Q. B. D. 85 ; and it was such special profits that were unsuccessfully sought for in *Waite* v. *Gilbert*, 10 Cush. 177 ; *Harvey* v. *Connecticut & Passumpsic Rivers Railroad*, 124 Mass. 421 ; *Swift River Co.* v. *Fitchburg Railroad*, 169 Mass. 326 ; *Hadley* v. *Baxendale*, 9 Exch. 341 ; and *Horne* v. *Midland Railway*, L. R. 7 C. P. 583 ; *S. C.* L. R. 8 C. P. 131. The difference between those cases and the case at bar is this : Delay in the delivery of scenery and the other properties of a travelling theatrical company ordinarily means no performance by the company. But delay in the transportation of the broken shaft of a mill, for

example, as in *Hadley* v. *Baxendale*, does not ordinarily mean that the mill will stop.

We construe the statement of the plaintiff's counsel in the case at bar " that he claimed no loss of profits and no loss in the market value of the goods by reason of the delay in the delivery of the goods, but that he did claim loss in the rental value or the loss of the use of the property," to be a statement that he did not ask for loss of special profits but for loss of the ordinary earnings of the property here in question.

The case at bar is not a case of special profit or special damage, but a case of the ordinary damages consequent on a delay in the delivery of scenery and other properties of a travelling theatrical company.    That a common carrier with notice is liable in such a case is plain from the decision made in *Simpson* v. *London & Northwestern Railway*, 1 Q. B. D. 274, as to delay in the delivery of samples to be exhibited at a cattle show.

The ordinary damages in case of a delay in the transportation of such property as we have in the case at bar are different from the ordinary damages in case of a delay in the transportation of ordinary merchandise, and for that reason carriers usually put such property in a different classification from that in which ordinary merchandise is put.    The question however is the ordinary damage from a delay in the transportation of that kind of freight.    To get those ordinary damages, notice that the freight to be transported is that kind of freight, and that it is to be used at its destination must be given to the carrier; and the damages recoverable are the ordinary earnings of the property in question.    See *Cory* v. *Thames Iron Works & Shipbuilding Co.* and *Ex parte Cambrian Steam Packet Co.*, *ubi supra*.

The case at bar presents a further question not raised by the facts of the cases last cited.    There was evidence here that the plaintiff told the defendant that he was " under a big expense, between three and four hundred dollars a week," in the use of the thing delayed in transportation.    In such a case, since the owner has to pay the expenses or some of the expenses incident to using the property, he can recover not the ordinary net earnings but the ordinary gross earnings less such expenses, if any, as the deprivation of the use of the property saved him from.

The concession made by the plaintiff's counsel that he did not

ask for special profits saves us from considering the suggestion thrown out in *Lonergan* v. *Waldo*, 179 Mass. 135, 139, that it may be that the fact that a carrier cannot refuse to carry goods offered to him for transportation prevents him from being held for special damages or special profits, as to which see Kelly, C. B. in *Horne* v. *Midland Railway*, L. R. 8 C. P. 131, 136, 137; Mayne, Damages, (7th ed.) 42.

The defendant raised a question as to whether an exception was properly taken to the refusal of the offer to prove the expense the plaintiff was under while waiting for the goods in question. But since in our opinion the case must go back for a new trial by reason of his other exceptions, it is not necessary to decide whether that exception was properly saved or not.

The plaintiff is entitled to a new trial on the question of damages.

*So ordered.*