Moss, Judge,
delivered the opinion of the court:
In September, 1919, the United States Shipping Board Emergency Fleet Corporation entered into a written agreement with the Jacksonville Shipping Corporation, under the’ terms of which said Fleet Corporation employed the Shipping Corporation to operate and manage for and on its behalf certain vessels then owned by the United States, allocated, and thereafter to be allocated, to said Shipping Corporation, as the agent of the Fleet Corporation, for the purpose of procuring and carrying cargoes between Jacksonville, Florida, and ports in Cuba, and the West Indies. The compensation, commissions, and fees were set forth in the agreement in accordance with a definite schedule.
On January 23, 1920, the Jacksonville Shipping Corporation agreed to transport certain lumber for plaintiff from Jacksonville, Florida, to Cuba, at the rate of $18 per one thousand feet. The negotiations for this undertaking were closed by a letter from said Shipping Corporation proposing to ship from three to eight million feet at the rate named, same “ to be shipped during the year 1920.” This proposal was duly'accepted by plaintiff.
Between April 5, 1920, and September 3, 1920, plaintiff delivered to the designated dock at Jacksonville for shipment to Cuba a total of 2,031,952 feet of lumber, and of this *43 amount the Shipping Corporation transported to certain ports in Cuba 1,031,681 feet.
The contract of agency provided that the Fleet Corporation might terminate same at any time. On September 4, 1920, the Fleet Corporation exercised that right and terminated the agency contract. Plaintiff at once conferred with Captain J. E. Hart, the local agent of the Fleet Corporation, with reference to the shipment of the lumber then “ on the dock, or in cars, unloaded, or in transit.” Defendant, through its said local agent, agreed to transport such portion of plaintiff’s lumber as was then on the dock and booked for shipment. This oral agreement was confirmed in writing by letter, from defendant’s said local agent, dated October 8, 1920. A certain moratorium was . declared by the Cuban Kepublic on October 9, 1920, and the sales of all the unshipped portion of said lumber were canceled, one of them immediately before the declaration of the moratorium, and the remainder directly thereafter. Plaintiff therefore declined the offer of defendant to ship said lumber.
During the period from April 5, 1920, to October 9, 1920, the lumber in question had a market value in Cuba of $75 per thousand feet; and because of the shapes, sizes, and dimensions in which it was manufactured for use in Cuba, it was worth only $10 per thousand feet on October 9, 1920, on the dock at Jacksonville.
Plaintiff is suing for the difference between $75 per thousand feet market value in Cuba, and $10 per thousand feet market value in Jacksonville, less the cost of transportation, $18 per thousand feet, on the lumber on the dock booked for shipment, shown to be 999,271 feet; or a total of $46,965.73.
Beginning with the first delivery of lumber by plaintiff in April, 1920, defendant’s agent, the Jacksonville Shipping Corporation, was notified of each delivery either before or at the time of the delivery, as to the amount of such delivery, the name of the consignee, the port to which same was to be shipped, with full shipping instructions.
There were three shipments of lumber from Jacksonville to Cuba. The first was made on July 20, 1920, the second on August 11, 1920, and the third and last on August 25, *44 1920. It is shown by uncontradicted evidence that almost from the beginning plaintiff began to urge the importance of prompt shipment of the lumber, and this was continued throughout the whole period, resulting in each instance in renewed promises of better service. On one occasion plaintiff was notified by the Government’s local agent, Captain Hart, that two certain vessels were bound for Jacksonville consigned to the service of the Jacksonville Shipping Corporation to load plaintiff’s lumber for shipment to Cuba. Preparations were made to load the lumber, and the vessels arrived in due time, and were immediately ordered back to Norfolk, Virginia. The record contains no explanation whatever of this action by defendant. The delay in the shipment of this lumber was brought to the attention of Captain Hart by representatives of plaintiff and of the J acksonville Shipping Corporation, and it was also brought to the attention of the proper officials in Washington by representatives of the Jacksonville Shipping Corporation. The facts on this point are almost undisputed. The defense seems to be limited to the question of the authority of the agent of the Jacksonville Shipping Corporation to make the contract for the shipment of plaintiff’s lumber, it being the contention of defendant that no period engagements extending beyond three months could be made without the approval of the district representative of defendant. An order to this effect was issued, but it was issued subsequent to plaintiff’s contract for the shipment of the lumber, and further, no such limitation was contained in the agency contract of September, 1919. It should also be observed that defendant, through Captain Hart, offered to ship the lumber remaining on the dock booked for shipment after the termination of said agency contract, thus recognizing the obligation of the Government under said shipping contract.
While the shipping contract provided that the lumber was “ to be shipped during the year 1920,” it was clearly understood that it was to be shipped immediately after delivery at J acksonville. It was piled on the dock for shipment and not for storage. No shipment whatever was made until three months after plaintiff began deliveries at Jack *45 sonville. Much of the lumber delivered in April was still on the dock when the agency contract was terminated. There is no pretense from any source that the shipping contract was complied with. In short, the defense of the Government is that the shipping contract was unauthorized, and the contention of its agent, the Jacksonville Shipping Corporation, is that it could not secure the necessary vessels for the moving of plaintiff’s lumber.
It is made to appear in the evidence that the agency contract was terminated “ on account of bad operations and irregularities.” In a telegram from Washington to the officer in charge at Savannah, Georgia, dated September 4, 1920, it was stated: “Reconsidering efficiency Jacksonville Shipping Corporation handling our tonnage compels us to withdraw all steamers * * However, the cause for the termination of the agency contract is no concern of plaintiff. The Government may not escape liability for losses to shippers resulting from the inefficiency, or bad business methods, of its authorized agent.
There was never, at any time, a refusal to ship the lumber. On the contrary, upon each protest or complaint there was a promise of relief. It was a continuing offer to ship for plaintiff such lumber as might be delivered to the Jacksonville dock for transportation to certain Cuban ports during the year 1920, to the extent, at least, of three million feet. Defendant’s theory that it had the whole of the year 1920 for the transportation of this lumber is not correct. The purpose of the provision for shipment during the year 1920 was to afford plaintiff the advantage of the stipulated freight rate for that period of time.
It can not seriously be contended, under the facts in this case, that the lumber was shipped within a reasonable time after its delivery at Jacksonville. The delay was flagrant and inexcusable. It is known that at least two vessels were sent to Jacksonville to be used in moving plaintiff’s lumber, and that they were ordered back to Norfolk by the Government. As stated above, no effort is made to explain this remarkable conduct. It is clear, we think, that if the lumber had been shipped within a reasonable time after delivery at Jacksonville the entire quantity would have reached its *46 destination in Cuba long prior to the declaration of the moratorium and the resulting cancellation of plaintiff’s contracts.
The measure of damages in this case is clearly stated by plaintiff. It is the difference between the market value of the lumber in Cuba and the market value of same at Jacksonville, deducting therefrom the amount of the freight, $18 per thousand feet, amounting altogether to $46,965.78. For cases in point see: Harvey v. Connecticut, etc., Ry. Co., 124 Mass. 421; 26 Am. Rep. 673; Brackett v. McNair, 7 Am. Dec. 447; Ogden v. Marshall, 59 Am. Dec. 497, 498. Plaintiff is entitled to recover $46,965.73, and it is so adjudged and ordered.
SiNNOtt, Judge/ GeeeN, Judge; Graham, Judge; and Booth, Chief Justice, concur.