1598.   ALKAHEST LYCEUM SYSTEM *v.* CURRY *et al.*

1. Damages recoverable for a breach of contract are such as arise natur-
   ally and according to the usual course of things from such breach, and
   such as the parties contemplated when the contract was made, as the
   probable result of its breach.
2. The damages sought to be recouped by the defendant were too remote,
   consequential, speculative, and uncertain; and the verdict is contrary
   to law and without evidence to support it.

Complaint, from city court of Abbeville—Judge Nicholson.
December 16, 1908.

Argued February 11,—Decided September 30, 1909.

*Hal Lawson,* for plaintiff.   *E. H. Williams,* for defendants.

RUSSELL, J.   The Alkahest Lyceum System made a contract
with Curry and certain other citizens of Abbeville, whereby it
agreed to furnish a lyceum course of five attractions, for which
Curry and the others agreed to pay $260; a stipulated amount
being prescribed for each number of the course, to be paid whether
the proceeds from that particular attraction were sufficient for the
purpose or not.   The contract is silent as to the time when the
attractions should be furnished, except that the approximate dates
are named, to be fixed specifically by the Alkahest Lyceum System;
and no hour is prescribed for the beginning of the performances.
The Alkahest Lyceum System sued for a balance claimed to be
due, of $132.50; and the defendants set up by way of recoupment
that one of the attractions, the Southern Trio and King, a musical
concert company, arrived at Abbeville on the day set for their ap-
pearance at night, and Curry went by the hotel and notified them
to be on hand at 8 o'clock at the auditorium at the schoolhouse,
which they promised to do.   They did not arrive at the auditor-
ium, however, until after that hour, so that the performance did
not begin until 9 o'clock, though it had been advertised for 8
o'clock.   On this particular occasion there was an entertainment
or reunion at the schoolhouse, at which a great many people were
present; and, as the school entertainment adjourned only a short
time before the hour set for the beginning of the musical con-
cert, it was very important that the performance that night should
begin promptly, so that some of the people at the school enter-
tainment would remain over and purchase tickets to the musical
concert.   When the troupe did arrive, the performance went on

40

without objection from the defendants, and the receipts were accepted by them. Neither the plaintiff nor the members of the concert company were notified that a failure to appear promptly at 8 o'clock would result in any special damage that night; indeed, so far as appears from the record, they did not even know that there was a school entertainment at the auditorium. The defendants, of course, did not know how many sales of tickets they had lost because of the failure of the concert company to arrive promptly at 8 o'clock, but they estimated that because of this dereliction they had lost enough to pay half of the cost of the entire course. They had agreed to pay the plaintiff $60 for this number of the course, and believed that if the performance had begun promptly at 8 o'clock they would have sold about 200 adult tickets at 50 cents a piece, and 100 childrens' tickets at 25 cents a piece, in addition to what they did sell; so that they lost about $125. They had not been told by any of these prospective ticket purchasers that if the performance had started at 8 o'clock they would have purchased tickets; but the defendants just supposed, believed, and estimated that they would have done so. None of the supposed purchasers had purchased tickets and gone into the house at 8 o'clock, though it does not appear that they knew the performance would not begin promptly as it had been advertised. The defendants did not refund any money to any of the people who had purchased tickets, though some of them got tired and left the auditorium before the concert company arrived. The jury rendered a verdict in favor of the plaintiff, for $15.50. The plaintiff was dissatisfied with the result, and so made a motion for another trial, and excepts to the overruling of its motion. Complaint is made that the verdict is contrary to law and without evidence to support it; and also that the judge erred in the following charge to the jury: "If you find, from the evidence, that at the time the Southern Trio and King did appear in Abbeville to carry out their performance under the contract between these parties, that these performers appeared at the auditorium at an unreasonable and unseasonable hour before they began their performance, and if you further find, in consequence of their so appearing late, an audience which had assembled in the auditorium dispersed and refused to remain at the entertainment, and people who would have bought tickets or remained during the entertainment, or failed to

buy such tickets, or failed to attend the entertainment by reason of the lateness of the hour the performers appeared, then it will be your duty to find damages for the defendant amounting to whatever you find from the evidence to be the sum of money which the defendants lost in gate receipts or ticket receipts by reason of the fact that that audience did disperse and leave the auditorium." In the foregoing statement no reference is made to other portions of the defendant's plea, in which damages are alleged by way of recoupment for other derelictions, which there was no attempt to support by evidence.

It is possible that some of the people who were at the school entertainment would have remained over to the musical concert if it had begun promptly at 8 o'clock, although none of them had purchased tickets or signified their intention of staying over—that is, none of those for whose failure to purchase tickets the defendants are seeking to recoup damages. But nobody knows but the prospective ticket purchasers themselves what their intention was, and they did not communicate their intention to any of the witnesses or the jurors; and so it is entirely uncertain and speculative as to how many of them would have remained over, and how many tickets the defendants would have sold in addition to what were sold if the concert had started at 8 o'clock sharp. "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated when the contract was made, as the probable result of its breach." Civil Code, § 3799. This excludes speculative damages. We do not think that at the time these parties made this contract they contemplated that naturally and according to the usual course of things a school entertainment would be held at the school auditorium immediately preceding the time set for this performance to begin, and that unless it did begin promptly at that hour the loss of gate receipts would be so great as to amount to half the price of the entire course of five attractions. If they had known of these special circumstances they might have provided for them in the contract. *Albany Phosphate Co.* v. *Hugger,* 4 *Ga. App.* 777 (62 S. E. 583). So far as appears, neither the plaintiff nor the musical-concert troupe were ever told about the school entertainment, and about the certainty of increasing the door receipts by beginning the performance at 8

o'clock sharp; if they had known about it, we dare say they might have co-operated with the plaintiff in "pulling off" the concert promptly at the advertised hour.   And then, too, the defendants did not make any legal proof that the delay of one hour had actually caused the loss claimed.   It is true they supposed, believed, and estimated that about 200 adults and 100 children, who would have stayed over and purchased tickets, failed to do so, because of the dereliction of the troupe; but against this supposition, estimate, and belief stands the physical fact that none of them were apprised that the performance would not begin at 8 o'clock, and yet they had not purchased their tickets or gone into the auditorium.   It is not usual for people who purchase tickets to such entertainments to wait until the performance begins before doing so. Furthermore, none of them had even signified their intention of purchasing tickets.   We are therefore constrained to hold that a new trial must be granted, for the reason that the verdict is contrary to law and without evidence to support it.   This makes it unnecessary to consider the charge to which exception is taken.

*Judgment reversed.*