### 2624.　CHAPPELL *v.* WESTERN RAILWAY OF ALABAMA.

1. Where a railroad company makes a contract with the proprietor of a theatrical company to transport the private car of the company to a certain city by a given hour, and knows at the time of making the contract that the object of the transportation of the theatrical company to the named city is that it may fulfill an engagement to show there, and thereafter fails to perform its contract, but carries the company to the city in question too late for the performance to be given, the proprietor

of the company has a cause of action against the carrier for a breach of the contract, and may recover as damages such an amount as in reasonable probability would have been earned by the giving of the performance, after deducting such expenses as were saved to him by reason of the performance not being given.

2. An act and a neglect may be both a breach of a contract and a tort. In such cases the plaintiff has his election as to whether he will sue ex contractu or ex delicto; but the measure of damages in the two cases is usually different; and often the question whether the damages which the plaintiff seeks to recover are too remote or not depends upon whether he has sued in the one form or the other.

3. A contract may be breached either in such of its terms as are express or in such of its terms as arise from reasonable implication; and in such cases, the plaintiff may recover such damages as the parties should reasonably have contemplated would result from a breach.

4. Where a railroad company hired to the proprietor of a theatrical company a baggage-car for the transportation of theatrical properties, and in connection with the car furnished lamps, one of which exploded on account of having been neglectfully filled, whereby the properties in the car were burned, the value of the properties so burned may be recovered in an action ex contractu brought against the railroad company by the person to whom the car was rented and who owned the properties, on the theory that while the contract did not expressly refer to the lamps, or warrant that they were in reasonably safe condition, nevertheless such was a reasonable implication flowing from the contract as made, and that the burning of the properties was reasonably to have been anticipated from the furnishing of defective lamps. Further damages flowing from the breach may (so far as they were within the contemplation of the parties at the time the contract was made) be also recovered.

DECIDED FEBRUARY 15, 1911.

Action for damages; from city court of La Grange—Judge Harwell. March 17, 1910.

*B. H. Hill, Hatton Lovejoy,* for plaintiff.

*Dorsey, Brewster, Howell & Heyman,* for defendant.

POWELL, J. The petition set up two distinct causes of action. Both proceeded ex contractu, however, and were, therefore, capable of being joined in the same suit, under the practice in this State. It will be necessary to discuss them both. Chappell was the owner and proprietor of a theatrical company traveling and showing under the name of " A Rabbit Foot Company," engaged in giving performances at "one-night stands" throughout the country. It had its own private car, in which the performers were transported. Having advertised a number of performances at different cities along the defendant's line of railway, Chappell made a contract with the railroad company whereby the latter undertook to transport this private car upon a designated schedule. One of the provisions is that the

car was to leave Tuskegee on September 9, at 6.50 a. m., and arrive at West Point at 1.30 p. m., and train number 2 was designated as the train which would carry the car. Train number 2 failed to pick up the car, and it was brought into West Point by another train, which arrived too late for the giving of the performance advertised there. The first cause of action stated in the petition is for the breach of the contract in the respect named. It is alleged that if the performance could have been given, $300 net would reasonably have been earned.

In addition to the transportation of this private car, the railroad company also contracted to furnish a baggage car for the accommodation of the properties and paraphernalia belonging to the theatrical company. As a part of the equipment of this car, a certain kerosene lamp was furnished. It was alleged that this lamp "had become clogged and stopped up at the place where the air was admitted to the flame; the oil in the lamp had been mixed with water, causing the oil to become contaminated and more likely inflammable; there was a crack in the bowl of said lamp, letting the oil escape as a gas into the air surrounding the lamp," from which an explosion of the lamp occurred, which set fire to the properties in the car while it was detained at West Point on the night after its arrival there, so that the properties in the car, to the value of some $2,000, were destroyed. By reason of the destruction of these properties the company was detained at West Point for 14 days, until other properties could be obtained, and could not give its advertised performances during that period of time. Chappell had to pay the expenses of his performers and their salaries, according to the contract he had made with them, and also lost the proceeds that he would have derived from giving the performances. He set out these amounts and sued for them also. To the petition demurrers were filed, both general and special. The court passed an order sustaining the demurrers, both general and special. Plaintiff brings error. The rule of decision in cases where the trial judge has sustained both general and special demurrers is for this court first to see if a cause of action is set forth; and if it is found that the court erred in overruling the general demurrer, the judgment will be reversed, leaving the matters in respect to the special demurrers open for further action in the trial court. Of course, the primary effect of sustaining a special demurrer is not the dismissal

of the petition, but a requirement that the plaintiff should amend and make his allegations more specific, or should strike such matters as are objectionable.

So far as the cause of action growing out of the failure of the railroad company to transport the private car from Tuskegee to West Point on time is concerned, it is conceded that this constituted a breach of contract, but it is insisted that no such damages as are alleged are recoverable; that the damages alleged are too remote and speculative in their character. The judge below doubtless placed his ruling largely upon the case of *Georgia Railroad* v. *Hayden,* 71 *Ga.* 518 (51 Am. R. 274). In that case the plaintiff, a theatrical manager, took passage for himself and troupe by way of the defendant's train, at Madison, Ga., for Augusta, which point, according to schedule time, should have been reached in such time as to have enabled the plaintiff and his company to reach Columbia, S. C., in time to keep their engagement for a performance there for which he had sold tickets amounting to $288. The Georgia Railroad train failed to make the connection, and the plaintiff sued to recover the $288. The court held in that case that as it did not appear that at the time the railroad company made the contract of carriage it knew of the nature of the plaintiff's journey, or of this independent transaction at Columbia, S. C., from which the damages immediately flowed, the plaintiff could not recover. The gist of the decision is contained in the following language with which the second headnote concludes: "Damages resulting from the particular character of the business of the traveler, unknown to the railroad company contracting with him, are too remote to be recovered." By a like distinction this case is also differenced from the *Alkahest Lyceum Co.* v. *Curry,* 6 *Ga. App.* 625 (65 S. E. 580). In this case, however, the railroad company knew at the time it made the contract what the particular character of the traveler's business was, and entered into the contract knowing that the plaintiff was making the contract with a view of fulfilling engagements to give performances from day to day. It is only to indulge the most natural inference to say that the company knew full well that if it did not transport the plaintiff's car to the places of engagement without unreasonable delay, the plaintiff would lose such sums as he would have been able to earn by giving these respective performances; hence, taking the allegations of the petition

as true, the railroad company will not be held liable for any uncontemplated damage, if it is held liable on the cause of action here asserted, because of the breaching of the contract through the unreasonable delay. We see no real merit in the point that the damages are too speculative in character to admit of their submission to the jury for estimate and assessment. While a number of contingencies may enter into the absolute calculation of what the earnings of a theatrical troupe for any particular performance may be, still it is a matter which a jury can estimate with very fair accuracy from the data which can ordinarily be supplied. Juries are frequently called upon to estimate the value of the earning capacity of an individual. Somewhat similar contingencies enter into the calculation where the earning capacity of a company is concerned. We think that if the jury is informed as to what the receipts of this company in other towns of similar size were, what other companies of similar character have earned in the same town at similar performances, what the state of the weather was, what the other surrounding conditions were, they can estimate fairly what the earnings from this particular performance would have been. This falls within the realm of estimation and of reasonable calculation, rather than within the realm of speculation. Juries are frequently called upon to solve problems much more difficult and involving many more contingencies. Of course, the measure of damage is not necessarily the gross receipts which would have been taken in from the performance. The plaintiff might have been saved some expense by reason of the performance's not being given. If so, the saving must be deducted from the loss, and the plaintiff should be allowed to recover only the net loss sustained. The advertising, the wages of the performers, and such matters as these are not to be deducted, for they were incurred anyway; but there may be expenses which would have been incurred if the performance had been given which were not incurred; for example, such as city license fees; and these should be deducted. As to this feature of the case the decision of the Supreme Court of Massachusetts in Weston v. Boston & Maine Railroad, 190 Mass. 298 (76 N. E. 1050, 4 L. R. A. (N. S.) 569, 112 Am. St. R. 330), is squarely in point; and the reasoning there given is such as to carry a strong conviction of its correctness. As pointed out in that case, damages are recoverable in cases of this character on a

somewhat different basis from that obtaining where the breach of the contract consists in a failure to deliver some ordinary commodity on time. It is also pointed out that to allow the plaintiff to recover his ordinary gross receipts, less the expenses saved, is not to allow a recovery for profits, in the sense of the rule which ordinarily excludes the profits from the computation of the damage.

2-4. As to the other cause of action asserted, in which the plaintiff seeks to recover damages resulting from the explosion of the lamp in the baggage car: The cause of action here asserted seems to us more doubtful than the one mentioned in the preceding division of the opinion. It must be remembered that the plaintiff was proceeding ex contractu. If the action had been proceeding ex delicto, on the theory that the defendant's negligence in furnishing a dangerous lamp along with its baggage car had caused the damage, we would have less doubt of the plaintiff's right to recover; for in torts the damages are not limited to such as may reasonably be said to have been within the contemplation of the parties at the time of the making of the contract, but are such as flow directly, proximately, and naturally as results of the wrong. In the case of *Atlantic Coast Line Railroad Co.* v. *Daniels,* ante, 775 (70 S. E. 203), we have discussed somewhat at length the meaning of this expression, and do not care to enter into an elaboration here. In suits ex contractu, however, the plaintiff must show the contract and a breach, and then can recover only such damages as the parties at the time of making the contract reasonably should have anticipated would flow from the breach. The defendant in this case meets the plaintiff at the threshold with the contention that he has no contract covering the matter sued for, that the contract between the parties is in writing and specifies only the furnishing of a baggage car and says nothing as to the furnishing of a lamp or as to the lamp's condition. It is a familiar rule that the full body of a contract is not to be found within the confines of the very words used. A contract is given formal expression in language, but there is hardly any form of speech which, from the very intrinsic nature of language itself, does not connote or imply as much or even more than it denotes or formally and expressly states. The law always enforces contracts not merely according to their literal terms, but also according to their reasonable and necessary implication. Both parties are held to the implications of the contract as strongly as

they are held to the very words. The language of this contract denotes only a baggage car, but it also connotes or implies the ordinary furnishing of a baggage car; and in this sense the lamps furnished with the baggage car are included in the term "baggage car" itself. Nothing is said as to the condition of the car or of the lamps; still the law implies that the parties contemplated and understood, and, consequently, agreed, that (except in so far as the facts known to the parties tend to negative the inference) the car and its furnishings should be reasonably suited for the purposes for which they were intended, and that they were free from hidden defects and dangers. In this view, it is not unfair to say that if the railroad company, under its contract to supply a baggage car, without further specification, supplied a defective lamp as a part of its furnishings, it breached the contract.

The action against the railroad company in this case does not proceed against it in its capacity as a common carrier, but in its capacity as the hirer of the car, under a special contract. In this respect, it is very similar in legal point to the case of *East Tenn. R. Co.* v. *Whittle*, 27 *Ga.* 535 (73 Am. D. 741), where the plaintiff chartered from the railroad company a car for the transportation of certain hogs. In that case the court said: "There is always and must be in such contracts certain implied undertakings by both parties; on the part of the hirer, that he will not overload the car, or freight it in a manner to injure it, etc.; on the part of the owners, that the car is in good condition, and substantial; that it will be carried safely, and in the usual time, to the point of its destination; that, if laden with stock, time and opportunity will be afforded to give them proper attention, etc., etc. For a breach of any of these implied engagements, the injured party would undoubtedly have a remedy to recover damages from the other for the injury sustained. Hamlock v. Giddes, 10 East Rep. 555."

The question then arises whether the burning of the theatrical properties contained in the car was such a damage as the railroad company might reasonably have contemplated as a result of their breach. As kerosene oil is a volatile, explosive, and inflammable substance, and as lamps which contain the defect mentioned in this case are likely to explode and set things on fire, according to the common experience of mankind, it seems that the destruction of the contents of the car by fire should very reasonably have been held

to have been within the contemplation of the defendant; it seems to be natural and reasonable to have expected this as a result of the breach. We think, therefore, that the plaintiff, upon proof of the facts alleged by him, may recover the value of the properties destroyed by the fire.

He seeks also to recover for the damage which resulted from his theatrical troupe's being detained during the 14 days, as a result of the properties being burned, so that they could not give their performances. To recover damages along this line, the plaintiff must show that at the time of the making of the contract the railroad company had such knowledge of the plaintiff's arrangements and existing contracts as to bring these things within the contemplation of the parties. The written contract itself seems to relate to engagements at La Grange, Newnan, and Atlanta, in addition to the one which the prior breach of the contract prevented at West Point; and from this fact the jury would be authorized to find that the parties would naturally have had in contemplation the loss resulting from the plaintiff's inability to give these performances as a part of the damages that would flow if the contract were breached so as to prevent their being given. Such damages as flowed from the plaintiff's inability to give further performances than these, in the absence of evidence that he (at the time the contract was entered into) had made additional engagements, and that the company knew this, would be too remote. The damages which the plaintiff would be entitled to recover because of the railroad company's breach of contract, preventing him from giving these performances, would be (as stated in Weston *v.* Boston & Maine Railroad, cited above) "the amount of the ordinary gross earnings from the exhibitions which he was prevented from giving, less the amount of the expenses from which his inability to use the property saved him."

As to the wages and expenses of his troupe: Of course the plaintiff can not recover for these things additionally; for they are included in the measure of damage just stated. If the plaintiff had not been under such contract with his employees that their salaries and expenses ran on though they were idle, the saving of the expenses and salaries would have been an item for which the company would have been entitled to credit, under the rule stated.

We think that we have said enough to enable the trial court to cause the petition to be shaped and the case to be tried in accordance

with the principles of law which we think control the case. We will reverse the judgment on the ground that the court erred in sustaining the general demurrer, and will give direction that the trial judge cause the petition to be perfected by amendment so as to confine the elements of damage to those which are allowable under the tenor and effect of what is said in this opinion.

*Judgment reversed, with direction.*