### 4316.   CARR & CO. *v.* SOUTHERN RAILWAY CO.

1. A tort may consist in the violation of a public duty imposed by the general law upon all persons occupying the particular relation involved in the given transaction or res gestæ. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded upon a contract. In such a case the liability arises out of the breach of duty incident to and created by the contract, but is only dependent upon the contract to the extent necessary to raise the duty. The tort consists in the breach of duty.

2. The petition sets forth an action ex delicto, and therefore the plaintiffs were not restricted to the recovery of such damages only as were reasonably within the contemplation of the parties, but were entitled to recover for such damage as might be directly traceable to the defendant's neglect or failure to use due care in delivering the shipment which it had accepted for transportation.

3. Where, in a suit for damages on account of the failure of a common carrier to deliver a shipment within a reasonable time, it appeared from the petition that the plaintiffs were contractors constructing a building under a time limit, and that the material constituting the delayed shipment was of an unusual kind, especially designed for the building then under construction, items of damages set forth in the petition, consisting of wages paid to a workman who was idle while waiting for the shipment, the expense of tracing the shipment, the forfeit which the contractors were compelled to pay by reason of the delay, and interest upon money which they were for the same reason compelled to borrow, were not subject to demurrer as being too remote for recovery.

4. The court properly sustained the demurrer to those items of damages set forth as "lost time" of the two partners composing the plaintiff firm, upon the ground that such damages were too remote, it not appearing how or why it was necessary for the plaintiffs to lose the time, or (except as a conclusion of the pleader) that they did not or could not at that time have obtained any other contracts of employment of the value alleged; especially since the petition alleges that the plaintiffs were contractors, and, in the absence of distinct allegations showing a certainty of profits, it would be entirely speculative as to whether the contractors would have made or lost money upon the contract, even if they had had the opportunity of making another contract within the time alleged to have been lost.

DECIDED JUNE 25, 1913.

Action for damages; from city court of Atlanta—Judge Reid. May 20, 1912.

*Green, Tilson & McKinney,* for plaintiffs.

*McDaniel & Black,* for defendant.

RUSSELL, J. The plaintiffs, who are alleged to be a firm of contractors engaged in the construction of houses and other buildings, filed a suit against the Southern Railway Company for damages for

failure to deliver within a reasonable time a shipment which it had accepted for transportation. The petition sets out that the plaintiffs were under contract to build a court-house for Columbia County, Arkansas. They had the inside woodwork gotten out by the Woodward Lumber Company of Atlanta, Ga. The Woodward Lumber Company delivered a car of this inside finish to the defendant railway company at Atlanta, Ga., consigned to J. B. Carr & Co. at Magnolia, Arkansas. This finished building material was loaded in Illinois Central car No. 15934, and was delivered to the railway company with direction, as appears from the bill of lading, to transport the same by way of the Queen & Crescent Route at Meridian, Mississippi. It is alleged in the petition that instead of transporting the car-load of material as directed in the bill of lading, and as it had contracted to do, the Southern Railway Company carried the car to Chattanooga, Tenn., and there delivered the car-load of building material to the Queen & Crescent Route, marked "Empty," and that it was thus carried to Louisville, Ky., as an empty car, and lay there for two months, although two weeks was a reasonable time for the transportation of the car from Atlanta to Magnolia, Arkansas. The petition alleges that "said Southern Railway Company was negligent in the transmission of said car of builder's material from Atlanta, Ga., to Magnolia, Arkansas, in that said car was by said Southern Railway Company negligently marked 'Empty,' and delivered to said Queen & Crescent Route at Chattanooga, Tennessee, to be carried to the yards of the Illinois Central Railroad at Louisville, Kentucky, to which place said car-load of material was carried as an empty car, as above stated, and there remained until on or about the 30th of July, 1906, as above stated; said Southern Railway thus negligently diverting said car from the route directed in said bill of lading, and thus causing an unusual, unnecessary, and unreasonable delay in the transmission of said car from Atlanta, Ga., to Magnolia, Arkansas." The plaintiffs made constant efforts to trace the car until it was found as above stated. The condition of the court-house was such that the inside finish was needed by the middle of June, 1906, and this material would have been at its destination, in the ordinary course, within this time, and yet the plaintiffs did not receive it until two months thereafter. It is alleged, that because of the delay consequent upon the non-delivery of the car-

load of material, the plaintiffs were compelled to suspend work on the construction of the court-house about the middle of June, 1906; that they were compelled to keep certain of their men employed upon the construction of the court-house on wages; that by reason of said non-delivery they were compelled to pay E. A. Zobell $3 per day for 45 days, amounting to $135, during which time Zobell was idle by reason of the non-delivery of said car of material; that petitioner H. A. Carr, by reason of the non-delivery of said car of builder's material, lost two months of time while waiting at Magnolia, Arkansas, for said car, which time was worth $100 per month or $200; that petitioner J. B. Carr lost two months of time while waiting at Magnolia, Arkansas, for the same reason, and his time was worth $200 per month, or $400; that petitioners were compelled to expend $114.20 for the expenses of J. B. Carr on two trips from Magnolia, Arkansas, to Atlanta, Ga., and return, in their efforts to locate the car of builder's material; that the contract of the petitioners with said Columbia County, Arkansas, provided for a forfeit of $20 per day should petitioners fail to complete the court-house by the 27th day of July, 1906; that by reason of the non-delivery of said car of material they were unable to complete the court-house until the 29th day of September, 1906, when the petitioners, by compromise, settled the forfeit, due to their failure to complete the building on time, for $200; that by reason of the delay caused by the non-delivery of the car, they were compelled to borrow $14,000 and pay interest thereon for two months, amounting to $186.66. The petitioners therefore place their damages at $1,235.86, with interest from the 15th day of August, 1906, alleging that they were "damaged by the negligence of the Southern Railway Company as above stated." The 9th paragraph of the petition alleges that "By reason of the above-stated facts, said Southern Railway Company is indebted to your petitioners in the sum of $1,235.86, with interest from the 15th day of August, 1906, which amount has been demanded of said company by your petitioners, and payment of the same was refused by said company, and is still refused." Attached to the petition, as an exhibit, is a bill of lading acknowledging receipt of a car of builder's material, I. C. 15934, consigned to "J. B. Carr & Co." at "Magnolia, Ark.," and marked "c/o Q. & C. at Meridian, Miss."

The defendant demurred to the petition generally, because no

cause of action is set out, and because the items composing the $1,235.86 sued for are not a subject-matter of recovery, and not the legitimate consequences of the failure of the company to deliver the shipment, as the items of damage could not have been held to have been reasonably within the contemplation of the parties when the shipment was delivered to the defendant. The defendant demurred specially to the 8th paragraph (in which the various items of damage are set forth as a whole), and also demurred specially to each specific item set forth in paragraph 8. The trial judge sustained the demurrer and dismissed the petition.

1. Necessarily the first question which presents itself is whether the action is one for damages arising ex contractu, or is one for a tort based upon a breach of public duty, in which the contract is only referred to as a necessary matter of inducement and to fix liability upon the tort feasor; for the learned trial judge, in sustaining the demurrer which sets up that the damages could not be held to be reasonably in the contemplation of the parties, must have adjudged that the suit was one upon contract. In suits to recover damages for breach of contract, the damages recoverable must necessarily be such as were within the contemplation of the parties, but in an injury due to tort any damages may be recovered which might reasonably have been anticipated as a consequence of the breach. We think the petition in the present case is very plainly an action in which the injured party is proceeding for a wrong, and that the contract is not counted on, though it is necessarily shown, in order to make it appear how the wrong was injurious. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded upon a contract. 1 Addison on Torts, § 27. And in such a case "the liability arises out of a breach of duty incident to, and created by, the contract; but it is only dependent upon the contract to the extent necessary to raise the duty. The tort consists in the breach of duty." Id., note 1. Tested by these principles this action is not a suit to enforce a contract, though the contract is referred to when it asks for damages. Since the breach of the contract alleged is a breach of a public duty by a common carrier, the action must be construed as one ex delicto. Even if there were doubt upon the question, we should hold, as has been several times held, that the doubt should be resolved by construing the action as one sounding in tort, since a

waiver of the tort must be·implied when, in such a case, the action is based upon the contract.

Pleadings are always to be construed most strongly against the pleader, and it is true that the 9th paragraph of the petition, if standing alone, would incline us to the view that the plaintiffs were attempting to sue, in the same action, for a tort and upon a contract, but the defendant did not take this view, and has filed no demurrer raising this point, and while the 9th paragraph is somewhat inconsistent with the petition as a whole, it can not be held to detract from or withdraw the allegations in the other paragraphs of the petition, which plainly evidence the intention of the plaintiffs to stake their case upon a tort. We do not consider that the fact of the bill of lading being attached to the petition evidences any intention on the part of the plaintiffs to sue upon the contract; because, as was held in *City & Suburban Railway* v. *Brauss,* 70 *Ga.* 376: "The tort, in such a case, is connected with the contract only as it enabled the tort-feasors to bring the wrong into it. . . If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded upon a contract. . . And in such a case, 'the liability arises out of a breach of duty incident to, and created by, the contract; but it is only dependent upon the contract to the extent necessary to raise the duty. The tort consists in the breach of duty.' "

The insistence of the defendant was that the damages sought to be recovered were not in the contemplation of the parties; and if the suit could be held to be an action ex contractu, the demurrer should have been sustained, because it is very easy to see that neither party, at the time of making the contract, contemplated that any of the losses or expenditures claimed by the plaintiffs would probably be necessary. Construing the action, however, as we do, as one in tort, it is entirely immaterial that these matters were not within the contemplation of the parties at the time the contract for shipment was made. The tort-feasor is liable for any damages consequent upon his act and which are directly traceable to it, if they could reasonably have been anticipated as likely to be the result of his neglect or failure to perform his duty. In an action sounding in tort the measure of damages is different from that in an action based upon a contract. In a suit upon a contract no element of damages is recoverable, unless it can reasonably be

considered to have been within the contemplation of the parties at
the time they entered into the contract. In actions ex delicto, how-
ever, the rule of liability is much broader. "In the field of delict
liability is much more far reaching. Here the rule is that the
wrong-doer is liable for all consequences which naturally follow
from his wrongful act, provided only they be not too remote." 1
Street on Foundations of Legal Liability, 88, and citations. In
other words, according to Mr. Street, "foresight and hindsight re-
spectively furnish the key to the question of the extent of liability
in the respective fields of contract and tort." The rule, as we un-
derstand it, is well stated in Stevens v. Dudley, 56 Vt. 166, "The
general rule is that the person who is guilty of a negligent act is
responsible for all the injurious results which flow therefrom by
ordinary natural sequence without the interposition of any other
negligent act or overpowering force. . . It is the unexpected,
rather than the expected, that happens in the great majority of the
cases of negligence."

Measured by the rule laid down by Mr. Street, in his Foundations
of Legal Liability (vol. 1, p. 90), the present action must be treated
as one ex delicto, because the law of negligence is "one single hom-
ogeneous body of legal principle; and we can not dissever negli-
gence, considered as pure delict, from negligence considered as
a breach of positive imposed duty." Foresight of harm is an
essential antecedent condition of liability, but when negligence
is shown, a defendant who is charged with the discharge of a
duty to the public is chargeable with all the injurious conse-
quences which proximately follow and which are not too remote.
Mr. Beven, in his work on Negligence (1 Bev. Neg., 3d ed. 106),
says that reasonable foresight of harm supplies the criterion
for determining the preliminary question as to whether negli-
gence in fact exists in a particular case; and that, if negligence
be established, the extent of liability is determined by the rule of
liability which applies in tort; that is to say, liability for estab-
lished negligence extends to all consequences of which that negli-
gence can be considered the legal, natural, and proximate cause.
Upon this point see *Chappell* v. *Western Railway of Alabama,* 8 *Ga.
App.* 792 (70 S. E. 208), citing *Atlantic Coast Line Railroad Co.*
v. *Daniels,* 8 *Ga. App.* 775 (70 S. E. 203). The rule announced in
*City & Suburban Railway* v. *Brauss,* supra, has been followed in
*Head* v. *Georgia Pacific R. Co.,* 79 *Ga.* 358-60 (75 S. E. 217, 11

Am. St. R. 434); *Southern Bell Telephone &c. Co.* v. *Earle,* 118 *Ga.* 507 (5), 510 (45 S. E. 319); *Wolfe* v. *Southern Ry. Co.,* 130 *Ga.* 251 (60 S. E. 569).

We have dealt with the measure of damages, in the determination of the nature of the action, because none of the items of damage alleged by the plaintiffs would be recoverable if the action is one upon the contract, since none of them could be said to be properly within the contemplation of the parties at the time the contract was made. On the other hand, construing the contract, as we must, as one in tort—dependent upon the defendant's breach of duty, as evidenced by the contract, we will next inquire whether any or all of these items of damage are too remote to be the subject-matter of recovery. Of course, what we shall say upon this point is not conclusive, except as a matter of law; for, of course, the plaintiffs will have to prove the allegation that these damages were, as alleged, the necessary result of and directly traceable to the alleged failure to "deliver within a reasonable time." We think that if the plaintiffs establish the allegation that it was necessary, in anticipation of the daily arrival of the finished inside work of the court-house, to retain the services of Mr. Zobell, and they paid him the sum mentioned, they would be entitled to recover it, upon proof of the allegations as to the cause of the delay. Likewise, it has been ruled more than once by the Supreme Court that the necessary expense of tracing lost shipments is a proper subject of recovery in an action for damages, such as the present case. We think, also, that the plaintiffs are entitled to recover the amount they paid in compromise of the penalty for failing to complete the buildings in time, provided the jury are satisfied that their liability to this penalty was due to the delay in the delivery of the shipment, set out in the petition. And if, by reason of the delay, the plaintiffs were required, in order to maintain their credit and meet demands when due, to borrow $14,000, which they would not have had to borrow but for the delay in delivery of this shipment, they would be entitled to have judgment, for the reasons stated in the headnote. We think the trial judge properly sustained the demurrer, so far as relates to the alleged value of the time of the two partners composing the plaintiff firm, upon the ground that these items were too remote for recovery, since there are no allegations showing how or why it was necessary for the plaintiffs to lose the time, and it not

appearing, except as a conclusion of the pleader, that these con-
tractors did not or could not at that time have obtained any other
contracts of employment of the value alleged. This is especially
true since the petition alleges the plaintiffs were contractors, and, in
the absence of distinct allegations showing a certainty of profits, it
would be wholly speculative as to whether the contractors would
have made or lost money upon the contract, even if they had had
the opportunity of making another contract within the time alleged
to have been lost.                            *Judgment reversed.*