(79 South. 508)

WHITE v. LOUISVILLE & N. R. CO.
(8 Div. 463.)

(Court of Appeals of Alabama. May 7, 1918.)

1. CARRIERS ⌖102—DELAY IN DELIVERY — LIABILITY.

When a common carrier negligently fails to carry goods to destination within reasonable time, the consignee may recover for breach of the contract or for negligent breach of duty.

2. CARRIERS ⌖105(2)—DELAY IN DELIVERY —SPECIAL DAMAGES.

Where a carrier negligently fails to deliver goods within a reasonable time, it is liable for special damages arising from the peculiar character of the goods or the immediate need thereof only when at the time it made the contract it knew, or was chargeable with knowledge, of the special circumstances, though such knowledge need not be expressly brought to the carrier's notice.

3. CARRIERS ⌖106—DELAY IN DELIVERY — SPECIAL DAMAGES—QUESTION FOR JURY.

Where a carrier had for long time carried machinery to the consignee whose plant was near the railroad which knew of the character of the business, it was for the jury to say whether the carrier in accepting a shipment, consisting of an engine, flywheel, crank shaft, eccentric rod, and bearings knew of the immediate need, and was therefore liable for special damages because the plant was shut down pending delivery of the shipment.

4. CARRIERS ⌖105(1)—DELAY IN DELIVERING GOODS—MEASURE OF DAMAGES — TORT OR CONTRACT.

In an action for the tort of a carrier in failing to deliver goods within a reasonable time, the measure of damages is different from the measure applied in actions for breach of contract, the carrier being liable for such damages consequent upon its act as could reasonably have been anticipated as likely to result.

5. CARRIERS ⌖103 — NEGLIGENT DELAY IN DELIVERY—PLEADING—SUFFICIENCY.

In action against carrier for negligent delay in delivering goods, brought to recover exemplary damages, allegation that the carrier "wantonly refused or failed to deliver" the goods

did not warrant recovery of exemplary damages; the pleading being no stronger than its weakest alternative.

Appeal from Circuit Court, Morgan County; R. C. Brickell, Judge.

Action by J. R. White against the Louisville & Nashville Railroad Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Tennis Tidwell, of Albany, and Sample & Kilpatrick, of Cullman, for appellant. Eyster & Eyster, of Albany, for appellee.

BRICKEN, J. This is an action by the appellant against the appellee to recover damages for failure to deliver two shipments accepted by it at Birmingham for carriage to the Hartselle Stave & Heading Company, at Hartselle, Ala. It appears that on January 1, 1913, a shipment consisting of a car of machinery was delivered to the appellee, at Birmingham, Ala., consigned to the appellant's stave mill, at Hartselle, Ala., which shipment was delivered at Hartselle 8 days later, and that on January 30, 1913, a band wheel, weighing 1,850 pounds, was delivered to appellee at Birmingham and consigned to the same consignee as the first shipment; this latter shipment was delivered 10 days later. On January 30, 1913, another shipment of machinery, pulleys, steel, blocks, etc., was delivered to the appellee consigned the same as the other shipments. This shipment was delivered on February 5th, "some 4 or 5 days before the delivery of the band wheel." All the shipments were handled by the appellee; it having a direct line from Birmingham to Hartselle. The Hartselle Stave & Heading Company was a trade-name, under which appellant did business, and on each of the occasions above referred to the appellant's plant had broken down, and the shipment of machinery and the band wheel were essential to a resumption of operation; the plant remaining idle during the period of delay. The undisputed evidence showed that 2 days was a reasonable time, under ordinary conditions, for the carriage of shipments of this character from Birmingham to Hartselle. The defendant attempted to excuse the apparent unreasonable delay by introducing evidence tending to show that the traffic at Birmingham at that time had become considerably congested. However, the evidence on this point was in conflict. It is further shown, without objection, that when the two shipments failed to arrive in the time usually required for their transportation, the appellant, on January 3d and January 31st and February 1st, respectively, and on several occasions thereafter, went to appellee's agent at Hartselle, and informed him of the fact of shipment and of the urgent necessity of prompt delivery, giving as a reason therefor the idleness of the plant, and that said agent attempted to expedite the shipment by telegraphing to the defendant's agents at Birmingham

about the delay. The plaintiff in the court below offered to show that from January 3d to January 9th his mills were idle, and the daily rental value of his mill during the time it was shut down. He also offered similar evidence covering the period from February 2 to February 8, 1913. The defendant's objection to this evidence was sustained, and the court, at defendant's request, instructed the jury that the plaintiff was not entitled to recover punitive damages or more than nominal damages, and from a judgment in favor of the carrier, appellant prosecutes this appeal.

[1] When a common carrier accepts a shipment for transportation, and negligently fails to transport it to its destination within a reasonable time, the aggrieved party may bring an action for the breach of a contract of carriage, or for the negligent breach of the duty imposed by the law of the land upon the carrier. If the action be for the breach of a contract, the general rule is that only such damages are recoverable as naturally and proximately resulted from the breach, that is to say, such damages as in the usual course of things naturally arise from a breach of a contract of that kind. "Where two parties have made a contract which one of them has broken, the damages which the one party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered, either arising naturally, i. e., according to the usual course of things, from such breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it." Brothers v. Ill. Cent. R. R. Co., ante, p. 273, 77 South. 424; Hadley v. Baxendale, L. R. 9 Exch. 341; Hart v. Coleman, 201 Ala. 345, 78 South. 201, 203.

[2] When special or peculiar circumstances surrounding the party at the time of the making of the contract are known to the carrier, or in cases where it is chargeable with such knowledge, then it is responsible for all such special or larger damages proximately resulting from the breach of the contract. The English court expresses this latter idea in this way:

"Whenever the object of the sender is specially brought to the notice of the carrier, or the circumstances are known to the carrier, from which the object ought in reason to be inferred, * * * damages may be recovered for the natural consequences of the failure of that object." Simpson L. & N. W. Ry. Co., 1 Q. B. Div. 274–277.

It is therefore well settled that in an action for the breach of a contract to carry within a reasonable time where the recovery of special damages is sought, it is necessary to prove that at the time the contract was entered into the carrier had notice, express or implied, of the object or special use to which it was contemplated that the shipment would be put; but it is not essential that the

intended use and application of the goods to be carried should be expressly brought to the carrier's notice at the time they are received. It is sufficient that such special use could have been reasonably inferred at that time from the known circumstances. The important fact in such cases is not the manner of receiving notice but the presence of notice on the part of the carrier. 4 R. C. L. 395.

[3] In the case at bar, it appears that the stave mill had been operated for a long time prior to the receipt of the shipment involved in this suit. The plant was a short distance from the appellee's depot at Hartselle, and the carrier had various transactions with the consignee, some of which involved the delivery of the machinery to it. The appellee had a side-track connection with the appellant's stave mill. The shipments were consigned to the Hartselle Stave & Heading Company. One of these consisted of an engine, flywheel crank shaft, eccentric rod, a box of fittings and bearings. The other shipment consisted of a band wheel 96 inches in diameter, weighing 1,850 pounds.

In view of these facts, we are of the opinion that the question of whether the carrier was chargeable with notice of the intended use of the shipments at the time they were received should have been submitted to the jury. In other words, that it was open to the jury to find that the carrier could have reasonably inferred from the known circumstances the special use to which the shipment was to be put.

In St. Louis & S. F. R. Co. v. Farmers' Union Gin Co., 34 Okl. 270, 125 Pac. 894, it appears that the gin company was erecting a gin upon the carrier's right of way in the city of Pawnee, Okl. Some gin stands were delivered to a connecting carrier at Prattville, Ala., which were received by defendant carrier, who delayed the shipment. The court held that the machinery was of such character as to charge the carrier with notice of the purpose to which it was intended to be put. The gist of what was decided is correctly expressed in the second headnote, as follows:

"Where gin stands and machinery for a cotton gin are shipped over a common carrier to a gin company whose plant is located and being built on the carrier's right of way, the carrier is charged with notice of the purpose and use of such machinery, and the period of the year in which it is used, and, in case of unreasonable and negligent delay in shipment, will be held liable for the damages which are the direct result of such delay, although no express mention of the purpose of such machinery and the period in which it is desired for use is made in the shipping contract."

In referring to the measure of damages, in the course of its opinion, the court said, 34 Okl. on page 280, 125 Pac. on page 899:

"Whatever detriment is caused, or whatever harm was done, resulted not from any fluctuation in the market values, but from being deprived of the specific, mechanical use for which this machinery was intended, and without which plaintiff could not operate its gin.

Hence it seems to us that whatever net benefit or value the use of this machinery would have been to consignee is the true measure of damages. Its use, in the specific office for which it was designed, is the thing which plaintiff lost."

In Harper Furniture Co. v. Southern Express Co., 148 N. C. 87, 62 S. E. 145, 30 L. R. A. (N. S.) 483, 128 Am. St. Rep. 588, which was an action for damages for unreasonable delay, in the carriage of an engine shaft weighing 650 pounds, the court said:

"The plaintiffs were a firm engaged in the manufacture and sale of furniture. Of this the title of the firm, consignee in the bill of lading, taken in connection with the character of the implement ordered and shipped, would give reasonable notice. In this day and time, certainly it is a matter of common knowledge that an engine shaft is the part by which the power of the engine is applied to the operating machinery; that it is essential and necessary for the purpose, and without it the engine itself and the machinery dependent upon it are for the time out of action. The kind and size, and weight of the shaft, would give notice of at least the maximum capacity of the engine."

The shipment in this case was by express rather than by freight. The court remarked that this was an additional circumstance which tended to show that the call was urgent, because of the unusual way and manner of the shipment. But if the facts above might be inferred from the nature and character of the shipment by an express company, they might with equal propriety have been inferred by a carrier of freight. Later on in the same opinion, the court said:

"The facts, we think, were such as to give clear indication that the shaft was designed for present use in the mill, and that some injury of the kind alleged would likely follow from breach of the contract of shipment, and require that the amount of the plaintiffs' damages should be considered and determined by the jury in that aspect. * * *"

This case was reversed because the trial court intimated an opinion that on the evidence it believed that only nominal damages could be recovered, which necessitated a nonsuit on the part of the plaintiff.

In Louisville & C. Packet Co. v. Bottorff (Ky.) 77 S. W. 920, a "self-feeder" was received by the carrier about the close of a wheat-threshing season. The consignee had contracted in the beginning of the season to thresh sundry crops of wheat for their neighbors and customers, upon the faith of being able to procure the self-feeder to do so, and the proof tended to show that with the help of the self-feeder, if it had been received in reasonable time after being ordered, they could have threshed every crop engaged to them, but by reason of the delay in its delivery they lost, and were compelled to abandon, many of these crops, and were compelled to employ extra hands and board them to properly operate their thresher without the assistance of the self-feeder. However, the only evidence that the carrier had notice of these facts was such notice as it

could infer from the character of the shipment itself. The plaintiff recovered a judgment for $250. The jury was instructed that:

"They might consider the increased cost of labor, if any, in operating the thresher, the loss of time or profits on the contracts made by appellee, caused by the failure, if any, of the appellant to transport the feeder to its destination in a reasonable time after prepayment of freight, if there was any such delay."

This instruction was approved and the case affirmed.

In Rocky Mt. Mills v. Wilmington, etc., R. R. Co., 119 N. C. 693, 25 S. E. 854, 56 Am. St. Rep. 682, a shipment of cotton mill machinery from Lowell, Mass., to Rocky Mount, N. C., was delayed by the carrier about 25 days, which caused the mills to stop. The carrier did not have any notice of the intended purpose of the shipment except such as could be gathered from the nature of the shipment itself. The lower court instructed the jury as follows:

"The court instructed the jury that the general rule of damages was such as was within the reasonable contemplation of the parties at the time the contract was made; that if defendant knew, or could have known or ascertained, by ordinary care, that the freight was cotton machinery, and of a kind and character that a delay would likely cause damage to the plaintiff and stop its mill, the defendants would be responsible for the damage resulting from the delay and strictly traceable to it; that they should allow interest on idle capital caused by the delay, as an element of damage, and the amount paid the hands by reason of the delayed shipment."

There was a verdict in favor of the plaintiff in the sum of $771.60, the instruction given by the trial court was approved, and the case affirmed.

In Neal v. P. & H. Hdw. Co., 122 N. C. 104, 29 S. E. 96, 65 Am. St. Rep. 697, the defendant was engaged in manufacturing flues for curing tobacco, and through its agent contracted to deliver certain flues to the plaintiff on July 1, 1895, and it failed to do so, and plaintiff's tobacco crop was damaged for the reason that he could not cure it. In the course of its opinion, the court said:

"The defendant contends that the plaintiff has shown no case for special damages, inasmuch as they did not flow naturally from the breach of contract, and that he had failed to show that the defendant had knowledge that special damages would result from a failure to deliver the flues according to the contract."

The court disposed of this contention in the following language:

"If the agent, Taylor, knew, or could by ordinary care have known, the purpose for which the flues were intended, his knowledge is the knowledge of his principal. * * * We think it must be common knowledge in localities where tobacco is cultivated that, if it is not cut and cured in apt time, serious loss is the necessary consequence, as well as the proper season for cutting and curing, and we must assume that this common knowledge was present with the agent, and the defendant who was engaged in manufacturing the flues for such purposes."

In Missouri Pacific R. R. Co. v. P. V. Z. Implement Co., 73 Kan. 295, 85 Pac. 408, 87 Pac. 80, 6 L. R. A. (N. S.) 1058, 117 Am. St. Rep. 468, 9 Ann. Cas. 790, an agent of a threshing machine company ordered some threshing machines for which he had taken orders from various parties in his territory. When the machines were delivered by the agent, he collected the purchase price, deducted a commission of 40 per cent. and forwarded the balance to his principal. Upon receipt of the agent's order for these machines, the machine company delivered them to a common carrier, and they should have arrived at their destination within 10 days. They were shipped in June, but on account of a delay in carriage did not arrive until the month of August, long after the threshing season had closed, and the sale contracts had for that reason been canceled. Suit was brought against the carrier, and the contention of the parties is best stated in the language of the court, as follows:

"Finally, it is insisted that a sale of the machinery was not within the contemplation of the parties at the time of shipment, and therefore commission is not a proper element of damages. A railroad company must be held to know facts familiar to ordinary people. It is fair to assume that a carrier of threshing machines knows what they are used for, and that the only purpose implement dealers have for shipping such property into the heart of a great wheat country is to sell it. When a shipment of threshing machines is made in June of any year, the inference follows that, if they are not already sold, an immediate sale is intended. We think, therefore, that the loss of commission is not so remote as to be excluded as an element of damage in this case. The general rule that damages caused by the loss of a sale, not within the contemplation of the parties, cannot be recovered, has no application to the facts here shown."

In P., B. & W. R. Co. v. Diffendal, 109 Md. 494, 72 Atl. 193, damages were claimed of the carrier for delay in the transportation of a carload of peaches from Baltimore, Md., to Washington, D. C. On the question of notice, the court said:

"When the defendant carrier accepted the refrigerator car containing the peaches, it had implied notice, from the character of the car itself, that the goods in the car were of a perishable nature, and by accepting the car, the carrier undertook the duty of exercising due care and diligence to protect the goods and to deliver them at their destination within a reasonable time."

The plaintiff in this cause was permitted to recover the market value of the peaches on October 2, 1905. This measure of damage was stoutly contested on this particular ground, as appears on page 509 of 109 Md., on page 198 of 72 Atl., of the opinion, the defendant contending:

"That there was no evidence in the case to show that the defendant had notice that the peaches were intended for Monday's market, and no evidence that it could by the exercise of due diligence have delivered the peaches at their destination in time for the market of that day."

In response to this contention, the court said:

"Under the circumstances of this case, we do not deem it essential that the plaintiff should have affirmatively proved that the defendant had

actual notice that the freight was intended for Monday's market. It became the implied duty of the defendant, in accepting the carload of fruit for transportation, to use due diligence to deliver the same at its destination within a reasonable time (Hutchinson on Carriers, § 652), and for a breach of this duty, resulting in loss to the plaintiff, the defendant was responsible in damages, whether the loss was occasioned by a fall in the market prices, or by damage to the goods themselves, or by a combination of the two causes. It was so held in Collard v. Railway Co., 7 H. & N. 79. Besides, the defendant had such notice as may be reasonably inferred from the circumstances of the case and the course of business."

In B. & O. R. Co. v. Whitehill, 104 Md. 295, 64 Atl. 1033, the fifth headnote is as follows:

"In an action against a carrier for delay in transporting and delivering cattle in time for a certain market, knowledge of defendant that the cattle were intended for delivery and sale at the market on a particular day may be shown from circumstances in the case, and need not be proved by direct and positive evidence of the communication of that fact to defendant."

From what we have said and the authorities above cited, it is apparent that the question of implied notice on the part of the carrier of the special circumstances in this case should have been left to the jury.

[4] We have so far considered the case as being for the breach of the contract. However, there are some counts in the complaint which are in tort, based on the defendant's alleged negligence in failing to carry the goods to their destination within a reasonable time. In an action sounding in tort, the measure of damage is different from that in an action based upon a contract. Armstrong's Case, 123 Ala. 233, 26 South. 349, is the leading authority in this state on that subject, and the rule therein laid down is as follows:

"A person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, and at the time of the negligent act have thought reasonably possible to follow, if they had occurred to his mind."

See, also, Railway Co. v. Quick, 125 Ala. 553, 28 South. 14; Briggs v. B. R., L. & P. Co., 188 Ala. 269, 66 South. 95, and Bacon v. Pullman Car Co., 159 Fed. 1, 89 C. C. A. 1, 16 L. R. A. (N. S.) 578, 14 Ann. Cas. 516.

In the case of Carr & Co. v. Southern Ry. Co., 12 Ga. App. 830, 79 S. E. 41, the plaintiffs were contractors engaged in the construction of a courthouse in Arkansas. They had the inside woodwork gotten out by an Atlanta, Ga., firm; loaded on a car consigned to them at Magnolia, Ark. The shipment was negligently delayed by the defendant carrier, and plaintiffs brought suit to recover a penalty which they had to pay for failing to complete the building within the time specified in the contract, which failure was caused by the negligent delay of the shipment of in-

side material; and they also contended that the delay required them to borrow and pay interest on $14,000 in order to maintain their credit, which they would not have had to borrow but for the delay in the delivery of this shipment. They also claimed that the delay necessitated their keeping skilled workmen on the job at a great expense, all of which were claimed as special damages. The question of whether or not the damages sought to be recovered were recoverable, in that kind of an action, was raised by demurrer. It was held that, the action being in tort, those damages were recoverable, the court pointing out the distinction between the two actions in the following language:

"The insistence of the defendant was that the damages sought to be recovered were not in the contemplation of the parties; and, if the suit could be held to be an action ex contractu, the demurrer should properly have been sustained, because it is very easy to see that neither party, at the time of making the contract, contemplated that any of the losses or expenditures claimed by the plaintiffs would be probable or necessary. Construing the action, however, as we do, as one in tort, it is entirely immaterial that these matters were not within the contemplation of the parties at the time the contract for shipment was made. The tortfeasor is liable for any damages consequent upon his act, and which are directly traceable to it, if they could reasonably have been anticipated as likely to be the result of his neglect or failure to perform his duty. In an action sounding in tort, the measure of damages is different from that in an action based upon a contract. In a suit upon a contract, no element of damage is recoverable, unless it can reasonably be considered to have been within the contemplation of the parties at the time they entered into the contract. In actions ex delicto, however, the rule of liability is much broader. 'In the field of delict liability is much more far-reaching. Here the rule is that the wrongdoer is liable for all consequences which naturally flow from his wrongful act, provided only they be not too remote.' 1 Street on Foundations of Legal Liability, 88, and citations. In other words, according to Mr. Street, foresight and hindsight, respectively, furnish the key to the question of the extent of liability in the respective fields of contract and tort. The rule, as we understand it, is well stated in Stevens v. Dudley, 56 Vt. 166: 'The general rule is that the person who is guilty of a negligent act is responsible for all the injurious results which flow therefrom by ordinary natural sequence without the interposition of any other negligent act or overpowering force. * * * It is the unexpected, rather than the expected, that happens in the great majority of the cases of negligence.' Measured by the rule laid down by Mr. Street in his Foundations of Legal Liability, vol. 1, p. 90, the present action must be treated as one ex delicto, because the law of negligence is one single homogeneous body of legal principle, and negligence considered as pure delict cannot be dissevered from negligence considered as a breach of imposed positive duty. Foresight of harm is an essentially antecedent condition of liability, but when negligence is shown, a defendant who is charged with the discharge of a duty to the public is chargeable with all the injurious consequences which proximately follow and which are not too remote. Mr. Bevan, in his work on Negligence (1 Bevan, Negligence in Law, 106), says that reasonable foresight of harm supplies the criterion for determining the preliminary question as to whether negligence in fact exists in a particular case,

but that, notwithstanding negligence being established, the extent of liability is determined by the rule of liability which applies · in tort; that is ·to say, liability for established negligence extends to all consequences of which that negligence can be considered the legal, natural, and proximate cause. Upon this point, see Chappell v. Western Railway of Alabama, 8 Ga. App. 792, 70 S. E. 208, citing Atlantic Coast Line R. Co. v. Daniels, 8 Ga. App. 775, 70 S. E. 203. The rule announced in City & Suburban Railway Co. of Savannah v. Brauss, supra, has been followed in Head v. Georgia Pacific R. Co., 79 Ga. 359–360, 7 S. E. 217, 11. Am. St. Rep. 434; Southern Bell Telephone & Telegraph Co. v. Earle, 118 Ga. 507(5)–510 (5), 45 S. E. 319; Wolff v. Southern Ry. Co., 130 Ga. 251, 60 S. E. 569. We have dealt with the measure of damages, in the determination of the nature of the action, because none of the items of damages alleged by the plaintiffs would be recoverable if the action is one upon the contract, since none of them could be said to be properly within the contemplation of the parties at the time the contract was made. On the other hand, construing the contract, as we must, as one in tort, dependent upon the defendant's breach of duty, as evidenced by the contract, we will next inquire whether any or all of these items of damage are too remote to be the subject-matter of recovery. Of course what we shall say upon· this point is not conclusive, except as a matter of law, for of course the plaintiffs will have to prove the allegation that these damages were, as alleged, the necessary result of and directly traceable 'to the alleged failure to 'deliver within a reasonable time.' We think that if the plaintiff establish the allegation that it was necessary, in anticipation of the daily arrival of the finished inside work ·of the courthouse, to retain the services of Mr. Zobell, and they paid him the sum mentioned, they would be entitled to recover it, upon proof of the allegations as to the cause of the delay. Likewise it has been ruled more than once by the Supreme Court that the necessary expenses for tracing lost shipments is a proper subject of recovery in an action for damages, such as the present case. We think, also, that the plaintiffs are entitled to recover the amount they paid in compromise of the penalty for failing to complete the buildings in time, provided the jury are satisfied that their liability to this penalty was due to the delay in the delivery of the shipment set out in the petition. And if, by reason of the delay, the plaintiffs were required, in order to maintain their credit, and meet demands when due, to borrow $14,000 which they would not have had to borrow but for the delay in delivery of this shipment, they would be entitled to have judgment, for the reasons stated in the headnote."

We also direct attention to the case of Savannah Ry. Co. v. Pritchard, 77 Ga. 412, 1 S. E. 261, 4 Am. St. Rep. 92, which supports the foregoing conclusions.

The rulings of the trial court were not in harmony with our views, as above stated, and for the errors indicated, the cause must be reversed.

[5] The complaint contains some counts which aver:

"That defendant, its agent or servant, wantonly refused or failed to deliver said property within a reasonable time, and because of said failure, plaintiff's plant was shut down," etc.

While the sufficiency of these alleged wanton counts were not challenged by demurrer, we are of the opinion that, construing them most strongly against the pleader, they fail to charge wantonness, but merely charge a failure or refusal to deliver within a reasonable time, a breach of duty, and nothing more. There is no averment that they wantonly refused or wantonly failed to deliver the property. The count is no stronger than its weakest alternative, and for that reason there was no error committed by the trial court in instructing the jury that the plaintiff was not entitled to recover exemplary damages.

If there was any negligent failure to deliver the shipment after its arrival at Hartselle, the law on this subject is so fully covered by the case of Southern Ry. Co. v. Lewis, 165 Ala. 451, 51 South. 863, that it is needless for us to attempt to add anything to what was said by the Supreme Court in that case. .

For the errors pointed out, the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.